IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MISTI SIMS, on behalf of ) <br> A.S., a minor, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW SAUL, ) <br> **Commissioner of the Social Security** ) <br> **Administration,** ) <br> ) <br>     Defendant. ) | Case No. CIV-19-176-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.    PROCEDURAL BACKGROUND

This case involves an application for Supplemental Security income filed by Ms. Sims, on behalf of her minor son, A.S., who suffered a left leg lower amputation in 2016. (TR. 505). Initially and on reconsideration, the Social Security Administration (SSA)

denied Plaintiff's application. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-25). Subsequently, the Appeals Council denied Plaintiff's request for review,[1] making the ALJ's decision the final decision of the Commissioner.

## II.   DETERMINATION OF DISABILITY FOR CHILDREN

The Social Security Act provides that "[a]n individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).

The Commissioner applies a three-step sequential inquiry to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a). At step one, the ALJ determines whether the child is engaged in substantial gainful activity. *Id.* at § 416.924(b). If not, the inquiry continues to step two for consideration of whether the child has a severe medically determinable impairment(s). *Id.* at § 416.924(c). If so, step three involves determining whether such impairment meets, medically equals, or functionally equals a listed impairment. *Id.* at § 416.924(d). A child's impairment functionally equals an impairment if it is "of listing-level severity; *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.]" *Id.* at § 416.926a(a), (d). A child will be found "not disabled" if the impairment

---

[1] (TR. 9-11).

does not: (1) meet the twelve-month duration requirement or (2) meet, medically equal, or functionally equal a listed impairment. *Id.* at § 416.924(d)(2).

## III. THE ADMINISTRATIVE DECISION

The ALJ followed the three-step sequential evaluation process established for minor children as set forth in 20 C.F.R. §416.924(a). At step one, the ALJ found that A.S. had never engaged in substantial gainful activity. (TR. 15). At step two, the ALJ concluded that A.S. suffered from the following severe impairments: Status post left below knee amputation and status post right partial foot amputation. (TR. 15). At step three, the ALJ concluded that A.S. did not have an impairment that met or medically equaled a listed impairment. (TR. 18). At step three the ALJ also evaluated the six domains to determine whether A.S.'s impairments functionally equaled a listed impairment. (TR. 18-25).

In doing so, the ALJ concluded that A.S. had "no limitation" in the domains of: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; and (4) Health and Physical Well-Being. (TR. 21-22, 24-25). The ALJ also concluded that A.S. had a "marked limitation" in the domain involving Moving About and Manipulating Objects and a "less than marked limitation" in the ability to care for himself. (TR. 23-24). Accordingly, the ALJ concluded that A.S.'s impairments did not functionally equal a listed impairment and therefore, he was not disabled. (TR. 25).

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ISSUE PRESENTED

Plaintiff alleges that the ALJ erred in failing to properly evaluate Ms. Sims' testimony. (ECF No. 15:4-13).

## VI. THE ALJ'S EVALUATION OF TESTIMONY FROM MS. SIMS

The ALJ erred in failing to properly evaluate testimony from Ms. Sims.

### A. The ALJ's Duty to Consider Parental Testimony

In determining whether a child is disabled, the agency will accept a parent's statement of a child's symptoms if the child is unable to adequately describe them. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014); 20 C.F.R. § 416.929. "In such a case, the ALJ must make specific findings concerning the credibility of the parent's

4

testimony, just as he would if the child were testifying." *Id.* (citing *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001)).

### B. Testimony from A.S. and Ms. Sims

At the hearing, Plaintiff testified that living with a prothesis has:

- caused him pain;
- changed his physical capabilities;
- caused him to be reclusive;
- affected his ability to concentrate and stay focused;
- resulted in him getting into more trouble; and
- affected his relationships with family members.

(ECF No. 34-38).

After Plaintiff testified, he was excused from the hearing room and Ms. Sims provided further testimony. According to Ms. Sims, A.S.:

- does not wash the amputated area;
- does not apply antibiotics to the amputated area, which causes infections and a smell like "a dead animal or a dead human being;"
- sometimes has a positive outlook on life, but then "the next day he's defeated and down trotted [sic];"
- has become more reclusive since the amputation;
- has suffered less success at school since the amputation; and
- has gotten in trouble at school and with legal authorities since the amputation.

(TR. 38-48).

## C. Error in the ALJ's Evaluation of Ms. Sims' Testimony

In the administrative decision, the ALJ considered testimony from A.S., and ultimately found:

> The claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(TR. 19). In support of this finding, the ALJ noted evidence in treatment records from August and November of 2016 regarding Plaintiff's physical abilities and a report that he was "[h]ighly active." (TR. 19). The ALJ deemed these reports inconsistent with Plaintiff's statements that he was upset about no longer being able to participate in sports. (TR. 19).

Plaintiff alleges error through the ALJ's failure to consider and properly evaluate Ms. Sims' testimony, arguing that is bears directly on the domains of: "Caring for Yourself" and "Interacting and Relating with Others." (ECF No. 15:5-13). Ms. Sims is correct.

In evaluating the domain involving "Caring for Yourself," the ALJ will consider "how well [the child] maintains a healthy and emotional physical state, including how well [the child] gets his physical and emotional wants and needs met in appropriate ways; how [he] copes with stress and changes in his environment; and whether [he] takes care of his own health, possessions, and living area." 20 C.F.R § 416.926a(k). Specifically, the domain states that "Caring for yourself means … following recognized treatment." 20 C.F.R § 416.926a(k)(1)(iv).

In evaluating this domain, the ALJ found a "less than marked limitation," stating: "Doctors have mentioned that [Plaintiff] needs to clean his stump and apply antibiotics as prescribed, which [A.S.] admits he does not always do. This noncompliance results in infected sores, which require wound treatment at times." (TR. 24). Plaintiff argues that the ALJ's description of the noncompliance is not as severe as Ms. Sims described it to be, and the Court agrees. According to Ms. Sims, Plaintiff's depression sometimes prevented him from washing his stump, which resulted in an infection that A.S. would not treat, which caused a "very, very, very, very, very, very foul smell" like "a dead animal or a dead human being." (TR. 41). Although the ALJ stated that A.S. testified regarding his noncompliance in caring for his stump, the transcript reveals no such testimony. *See* TR. 34-38. Instead, it was Ms. Sims who provided the testimony, which went beyond "infected sores, which require[d] wound treatment."

In evaluating the domain involving "Interacting and Relating with Others," the ALJ will consider "how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R § 416.926a(i). Specifically, the domain states that "[A]ctivities at home or school or in your community may involve ... responding to persons in authority." 20 C.F.R § 416.926a(i)(1)(iv).

In evaluating this domain, the ALJ found "no limitation," stating: "The claimant alleges he is more reclusive since his injury, but there is no evidence of an inability to

relate to and interact with others. He reports having friends with whom he plays basketball, and he has a girlfriend. His mother reports no difficulties interacting and communicating with the claimant." (TR. 22). Plaintiff argues that Ms. Sims' testimony provides "unique insight" into this domain which the ALJ failed to consider, and the Court agrees.

According to Ms. Sims, school officials won't allow A.S. to play football or basketball because "he's a liability to other children." (TR. 43). A.S. had met with college football coaches OU and TCU and had a "guarantee[d] successful career what he wanted to do" which no longer existed following the amputation. (TR. 43). The lack of ability to play sports and having people look at his prosthetic caused A.S. to be more reclusive and "eliminate hisself [sic] from … a lot of his friends he has." (TR. 44). Ms. Sims also stated that A.S. had a run in with the juvenile authorities, charged with possession of stolen goods. (TR. 45). The ALJ's findings in this domain do not reflect Ms. Sims' or A.S.'s testimony. The ALJ discounted Plaintiff's testimony about not being able to play sports by citing evidence in the record approximately one year prior to the hearing. (TR. 22). But at the hearing, Ms. Sims testified that A.S. has been told he cannot play school sports; a determination which has caused A.S. to become more reclusive, achieve less success in school, and get into trouble with authorities—circumstances which directly bear on the domain involving "Interacting and Relating with Others."

In defense of the ALJ's failure to evaluate Ms. Sims' testimony, Defendant offers two arguments, but neither have merit. First, the Commissioner argues "this was hardly

a case where a child claimant was unable to describe his condition—such that Plaintiff's testimony, alone, would have been crucial to the resolution of this case. To the contrary, A.S., a teenager, testified adequately about his symptoms and functional abilities." (ECF No. 17:9). But the Commissioner's argument ignores the fact that the ALJ had essentially rejected Ms. Sims' testimony regarding Plaintiff's ability to participate in sports in favor of other evidence. Because the ALJ had done so, he had a specific duty to discuss Ms. Sims' testimony and explain why he had rejected it. *See Bledsoe ex rel. J.D.B. v. Colvin*, 544 F. App'x 823, 824–26 (10th Cir. 2013) (reversing based on ALJ's failure to make any credibility findings regarding testimony from mother of minor child applying for disability benefits, despite the fact that both mother and son had testified at the administrative hearing, stating: "If the ALJ in fact rejected [the mother's] testimony in favor of other evidence, it was his duty to make specific findings that showed how he arrived at his conclusion.").

Second, Defendant states: "To the extent Plaintiff provided some additional testimony as a third-party lay witness, the ALJ was not required to discuss every piece of evidence." (ECF No. 17:9). The Court rejects this argument. *See Panas on behalf of M.E.M. v. Comm'r, SSA*, 775 F. App'x 430, 440 (10th Cir. 2019) ("It was improper for the ALJ to disregard the father's evidence because it was a lay opinion. The ALJ must consider evidence from the child's parents.") (citing 20 C.F.R. § 416.926a(b)(3)).

In sum, the Court finds error owing to the ALJ's failure to evaluate Ms. Sims' testimony and make related findings on the record. On this basis, remand is warranted.

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and remands the case for further administrative proceedings.

ENTERED on November 22, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE